**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| ADRIAN MELVIN, § § | |
| Plaintiff, § § | CIVIL ACTION NO.: |
| v. § § | _____ |
| GREASE MONKEY § INTERNATIONAL, LLC, § Defendant. § § | JURY DEMAND |

## COMPLAINT

### I. INTRODUCTION

1. Plaintiff, Adrian Melvin, brings this action under Title VII of the Civil Rights Act of 1964, as amended. Plaintiff is entitled to equitable relief, compensatory damages, liquidated damages, punitive damages, as well as attorneys fees and costs.

### II. JURISDICTION AND VENUE

2. This Honorable Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under federal law, specifically Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as a substantial part of the alleged and unlawful employment practices occurred within this district.

**III.   PARTIES**

4. Plaintiff Adrian Melvin (hereafter "Plaintiff" or "Melvin") is an adult African American resident of Alabama and former employee of Defendant.

5. Defendant Grease Monkey International, LLC (hereafter "Defendant" or "GMI") conducts business in Alabama. GMI is an employer as the term is defined by Title VII of the Civil Rights Act of 1964.

**IV.   ADMINISTRATIVE EXHAUSTION**

6. Melvin timely filed his charge of discrimination based on the Title VII and the ADA with the Equal Employment Opportunity Commission (hereafter "EEOC") within 180 days after the last discriminatory treatment. Melvin further filed his discrimination suit within 90 days after receiving his right-to-sue letter issued from the EEOC.

**V.   STATEMENT OF FACTS**

7. GMI first hired Melvin as an Assistant Manager on or around October 4, 2021.

8. After a period of excellent job performance, GMI promoted Melvin to Center Manager at its Dothan, Alabama location.

9. Due to Melvin's excellent performance as Center Manager, his District Manager brought a District Manager in Training to Melvin's store to observe what it admits was a clean and well-run store.

10. Throughout Melvin's entire employment as Center Manager for GMI, his stores regularly received top-scoring performance metrics and praise.

11. During Melvin's time as Center Manager in Dothan, GMI did not allow him to provide pay raises to his subordinates as it did similarly situated non-black Center Managers.

12. After some time at GMI's Dothan, Alabama location, GMI offered Melvin a transfer to its Auburn, Alabama location along with a pay raise.

13. Angel Aguilar (hereafter "Aguilar") was the District Manager over the Auburn location.

14. Aguilar made said offer to Melvin.

15. Melvin then told Eric Barr (hereafter "Barr"), GMI's Regional Manager, of his acceptance of the offer.

16. After acceptance of the offer, GMI did not contact Melvin about his transfer.

17. Confused, Melvin contacted GMI's Human Resources Department, who informed him their notes reflected Melvin rejected the offer work in Auburn.

18. The events referenced in Paragraphs 11-16, above, happened again with respect to a transfer to GMI's Montgomery, Alabama location.

19. Melvin complained of race discrimination to GMI's President, Vice President, and Regional manager on or around February 20, 2023.

20. Shortly after his complaint, GMI assigned Melvin to its Bainbridge, Georgia location.

21. This relocation forced Melvin to commute a considerable distance to reach work and return home.

22. While Melvin worked in Bainbridge, GMI did not offer him reimbursement for mileage as it did similarly situated non-black Center Managers.

23. GMI also promised Melvin an approximate $10,000 increase in his salary after he finished a remodel of its Bainbridge, Georgia store, but never provided the promised raise.

24. Melvin again complained of race discrimination to Anderson Bazile, GMI's Regional Human Resource Manager.

25. GMI purportedly investigated Melvin's concerns but returned no information to Melvin.

26. Anderson Bazile also claimed he would orchestrate a meeting between Melvin and his superiors, but no such meeting was organized.

27. After some time working in Bainbridge, and in or around May of 2023, GMI's Montgomery, Alabama district had two vacancies for Center Manager positions.

28. GMI's District Manager told Melvin he would become Center Manager for either his Montgomery or Auburn location but said District Manager did not

follow up with Melvin to carry out these promises.

29. In 2023, Melvin applied for District Manager and/or District Manager in Training positions.

30. GMI overlooked Melvin in its selection process for these positions because of Melvin's prior protected activities and instead awarded the positions to lesser qualified non-black individuals and/or those who did not engage in protected activities.

31. Melvin returned to GMI's Dothan, Alabama location in or around February of 2024, where GMI tasked him with terminating the Center Manager and Assistant Manager.

32. GMI told Melvin he would be at the Dothan location for a matter of weeks before joining the Montgomery or Auburn teams as Center Manager.

33. However, given the events described above, Melvin resigned in or around the same month.

## VI. CAUSES OF ACTION

### A. TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 (RETALIATION)

34. Melvin incorporates by reference Paragraphs 2 through 33 above.

35. Melvin held an objective and good-faith belief that he was being discriminated against on account of his race.

36. Melvin complained of the same.

37. Melvin's complaints constitute activities protected by Title VII of the Civil Rights Act of 191964.

38. In response to Melvin's protected activities, and in violation of the law, GMI retailed against Melvin by failing to promote him and otherwise altering the terms and conditions of his employment as Center Manager.

39. As a result of GMI's actions and/or inactions, Melvin incurred substantial mental anguish.

### B. TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 (DISPARATE TREATMENT)

40. Melvin incorporates by reference Paragraphs 2-33 above.

41. Melvin brings this disparate treatment claim based on race, and pursuant to Title VII of the Civil Rights Act of 1964.

42. Melvin is a black, African-American.

43. Because of his race, GMI treated Melvin disparately when it retracted job offers, failed to promote Melvin, paid him less as compared to similarly situated but lesser experienced Center Managers, and failed to reimburse him for travel expenses, among other terms and conditions of employment.

44. As a result of GMI's actions and/or inactions, Melvin incurred substantial mental anguish.

### VII. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays that this Court will assume jurisdiction of this action and provide relief as follows:

a) Issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of the defendant as applied to the plaintiff are violative of his rights secured by Title VII of the Civil Rights Act of 1964;

b) Grant the plaintiff a permanent injunction enjoining the defendant, its agents, successors, employees, attorneys and those acting in concert with the defendant and at the defendant's request from continuing to violate Title VII of the Civil Rights Act of 1964;

c) Enter an order requiring the defendants to make the plaintiff whole by awarding him compensatory, punitive and/or nominal damages.

d) The plaintiff further prays for such other relief and benefits as the cause of justice may require, including but not limited to, an award of costs, attorney's fees and expenses.

Dated:  March 27, 2025.

/s/ Eric C. Sheffer
Eric C. Sheffer
**Counsel for Plaintiff**

OF COUNSEL:
WIGGINS, CHILDS, PANTAZIS,
FISHER & GOLDFARB, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
Telephone: (205) 314-0500
Facsimile:  (205) 254-1500
E-mail: esheffer@wigginschilds.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY**

/s/ Eric C. Sheffer
**OF COUNSEL**